1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DONNA VERNON, | ) | 1:11-cv-2111 AWI-BAM |
| | ) | |
| Plaintiff, | ) | **FINDINGS AND RECOMMENDATIONS** |
| | ) | **REGARDING PLAINTIFF'S SOCIAL** |
| v. | ) | **SECURITY COMPLAINT** |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## BACKGROUND

Plaintiff Donna Vernon ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe, for findings and recommendations to the District Court.

///

///

1

## FACTS AND PRIOR PROCEEDINGS[1]

On December 10, 2008, Plaintiff filed her first applications for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI, respectively, of the Social Security Act (the Act), alleging disability beginning January 1, 1997. AR 10. Plaintiff's application was denied initially and on reconsideration. AR 1. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 10. ALJ Phillip Callis held a hearing on October 19, 2010, and issued an order denying benefits on December 7, 2010. AR 10-20. The Appeals Council issued a decision affirming the ALJ's order. AR 1-3. This appeal followed.

### Medical Record

The entire medical record was reviewed by the Court. AR 220-465. The medical evidence will be referenced below as necessary to this Court's decision.

### Hearing Testimony

ALJ Callis held a hearing on October 19, 2010, in Fresno, California. Plaintiff appeared and testified. She was represented by attorney Jeffrey Milam. Impartial Vocational Expert ("VE") Jeff L. Clark also testified. AR 21.

Plaintiff was born on March 27, 1966 and was forty-four years old at the time of the hearing. She has a 7th grade education with no additional formal or vocational training. AR 25. Plaintiff cannot read or write English. AR 26. At the time of the hearing, Plaintiff testified that she lives with her friend. She has adult children and grandchildren, none of which live with her. AR 26. Although Plaintiff has been diagnosed with opioid dependence, Plaintiff testified that she no longer uses street drugs and has been clean for about two years. AR 27. She currently treats her addiction with Methadone. AR 26.

Plaintiff has no work history and has not worked since she applied for benefits. In fact, Plaintiff has only held one job in her life. For one week, Plaintiff worked as a line worker in a processing plant. Plaintiff was dismissed from that job for missing work to go out of town. AR 29.

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1    When asked about the onset of her disability, Plaintiff replied that she was diagnosed with

2    carpal tunnel syndrome six months prior to the hearing.  AR 30.  Plaintiff prepares meals for herself,

3    and does her own washing and cleaning. However, Plaintiff complained that sometimes she is unable

4    to wash dishes because the pain in her hands makes it difficult.  AR 29.  Plaintiff testified that she

5    is unable to lift anything heavier than a gallon of milk and she can only sit for 45 minutes at a time.

6    AR 32.  According to Plaintiff, after sitting for extended periods of time her feet go numb and her

7    legs retain water.  AR 32.  Plaintiff can stand for ten minutes, walk a city block, but is unable to do

8    her own shopping.  AR 33. Plaintiff also suffers from fibromyalgia and chronic pain. AR 34. To

9    relieve her pain symptoms, Plaintiff takes Methadone and Vicodin.  AR 35.  Plaintiff's x-rays and

10   MRI's do not reveal any abnormalities.  AR 35.  Asked about her mental health problems, Plaintiff

11   testified that she suffers from panic attacks and anxiety.  AR 36.  To deal with her anxiety, Plaintiff

12   takes Seroquel and Celexa.  AR 37.

13   Upon questioning by her attorney, Plaintiff testified that she takes water pills that cause her

14   to go to the restroom every hour on the hour.  AR 38.  Plaintiff's water pills also cause fluid retention

15   in her ankles, feet and hands.  AR 40.  In order to alleviate the retention, Plaintiff must elevate her

16   legs for six to seven hours a day.  AR 40.  Plaintiff also clarified that though she had never been

17   employed outside of the home, she was a housewife for many years.  Plaintiff also testified that she

18   weighs 285 pounds and her weight causes increased pain in her knees.  AR 39.

19   Thereafter, the ALJ elicited the testimony of vocational expert Jeff Clark. AR 41.  VE Clark

20   indicated that Plaintiff has no past relevant work. AR 42.  The VE was then asked to consider several

21   hypothetical questions posed by the ALJ.  First, VE Clark was asked to assume a hypothetical worker

22   of Plaintiff's age, education, and work experience who can perform medium or light work, limited

23   to simple repetitive tasks with limited public contact; who can only climb ladders, ramps and

24   scaffolds occasionally. AR 43. VE Clark indicated such an individual could perform numerous jobs

25   in the economy—too numerous to enumerate.  AR 43.

26   In a second hypothetical, VE Clark was asked to consider the same worker, who can perform

27   sedentary work with the following abilities and/or limitations: needs a sit/stand option; can perform

28   occasional bilateral use of the upper extremities for fingering, handling and feeling; and is limited

to simple repetitive tasks, limited public contact and can climb ladders, scaffolds, and ramps occasionally.  AR 44.  VE Clark testified that no work would be available for such an individual. AR 44.

Modifying the second hypothetical, the ALJ asked the VE to consider the same individual with an additional limitation that the hypothetical worker has to take bathroom breaks, up to two times an hour for five to ten minutes at a time.  The VE indicated that such an individual would be unable to perform any work as it exists in the national economy.  AR 57.

**ALJ's Findings**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 10-20.

More particularly, the ALJ found that Plaintiff had not engaged in any substantial gainful activity.  AR 18.  Further, the ALJ identified borderline intellectual functioning, left knee osteoarthritis, history of opioid dependence, and obesity as severe impairments.  AR 12. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments did not meet or exceed any of the listed impairments.  AR 13-14.

Based on his review of the entire record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform medium work, but she can only occasionally climb ladders, ropes, or scaffolds and is limited to simple repetitive tasks with limited public contact.  AR 14-15. Given this RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. AR 19-20.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record

4

as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Here, Plaintiff argues that the ALJ's findings are not supported by substantial evidence and are not free of legal error because the ALJ failed to: (1) properly consider the evidence at Step Five; (2) properly evaluate her credibility; (3) properly evaluate her treating physician's opinion, and (4) that her case should be remanded to consider the new evidence submitted to the Appeals Council.

## DISCUSSION

### 1. Step Five Findings

Plaintiff argues that the VE failed to identify specific jobs that she could perform in the national economy.  As a result, the ALJ could not rely on the VE's testimony. (Doc. 17 at 5).  At the hearing, the VE did not name a specific job that Plaintiff could perform.  Instead, the VE testified that there were "numerous" jobs a hypothetical person like Plaintiff could perform; jobs too numerous to enumerate.  AR 43.

At Step Five, the burden shifts to the Commissioner to show that the claimant retains the ability to perform other gainful activity. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can perform, given his or her age, education, work experience, and RFC. 20 C.F.R. §§ 404.1512(g), 416.912(g). The Social Security Regulations ("SSR") state that the ALJ is permitted to rely on VE testimony that there exists jobs that Plaintiff could perform. *See* 20 C.F.R. § 416.966(a-d); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("a vocational expert's recognized expertise provides the necessary foundation for his or her testimony, and no additional foundation is required").

At Step Five, the ALJ Callis opined as follows:

> The Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations in accordance with Social Security Ruling 83-10.

> Social Security Ruling ("SSR") 83-10 states that when the medical-vocational rules were promulgated, administrative notice was taken of the fact that it was possible to identify at the unskilled level approximately 2,500 sedentary, light, and medium occupations, each representing numerous jobs in the national economy. 20 C.F.R. 404.1566 and 416.966. These "base" occupations are unskilled in the terms of complexity, "unskilled work" defined in SSR 83-10 as work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, a job is considered unskilled if the primary work duties are handling, feeding, and off bearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed.

AR 19.

Plaintiff argues that it was error for the ALJ to rely on the VE's incomplete testimony. However, the ALJ is permitted to draw reasonable inferences logically flowing from the record. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In his opinion, the ALJ associated the VE's testimony with Social Security Ruling 83-10 which states that it is possible to identify at the unskilled level, approximately 2,500 sedentary, light and medium occupations, each representing numerous jobs in the national economy. AR 19. The ALJ could reasonably infer from the VE's

testimony that there are significant "base occupations" as detailed in SSR 83-10 that Plaintiff could perform, despite her limitations.

Even if the Court were persuaded that the ALJ erred in failing to elicit testimony from the VE identifying specific jobs that Plaintiff could perform, the error was harmless. An ALJ's error is harmless when such error is inconsequential to the ultimate non-disability determination. *See Stout v. Commissioner of Social Security*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless."); *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991) (harmless error rule applies to review of administrative decisions regarding disability). The social security regulations and case law state that the ALJ is permitted to rely on VE testimony that there exists jobs that Plaintiff could perform. *See* 20 C.F.R. § 416.966(a-d); *Bayliss*, 427 F.3d at 1218. Relying on the VE's testimony, the ALJ noted that the vocational expert testified that, given the non-exertional limitations in the claimant's residual functional capacity, there may be a 50% erosion in the number of jobs available, but they were still too numerous to mention. AR 20. Accordingly, even assuming that the failure to identify specific jobs was error, given the vast number jobs available to Plaintiff despite her limitations, the Court finds that the ALJ's error here, if any, was harmless.

### 2.   *Medical Opinion Evidence*

Next, Plaintiff contends the ALJ erred by failing to give "specific and legitimate" reasons for rejecting the opinion of treating physician Gretchen Webb-Kummer, M.D. (Doc. 17 at 8).

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d at 647. At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this

opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450.  As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456.  In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor. *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir. 1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995).  For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating physicians . . .." *Magallanes*, 881 F.2d at 752.  Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, on contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating physician's opinion. *Id*. at 751-52. The opinions of nonexamining physicians are substantial evidence where they are supported by clinical findings and objective tests. *Id.*

Here, the ALJ provided three reasons for affording treating physician Dr. Webb-Kummer's opinion little weight: (1) it was not supported by clinical findings, (2) it was internally inconsistent; and (3) it was inconsistent with the objective findings.

The ALJ summarized Dr. Webb-Kummer's medical opinion as follows.

8

On March 12, 2010, treating physician Gretchen Webb-Kummer, M.D. completed a form indicating the claimant was unable to lift, bend, climb, crawl or stand for prolonged periods, due to diagnoses of severe left knee osteoarthritis and bilateral carpal tunnel syndrome, and was therefore temporarily disabled from March 25, 2010 to December 31, 2010. Thereafter, the same doctor prepared two separate one-page questionaires expressing opinions as to functional limitations. The first, dated June 23, 2010, stated the claimant had been precluded from any full time work since May 8, 2009, because of carpal tunnel syndrome and knee osteoarthritis, being able to only stand or walk five minutes, sit one hour, and frequently lift five pounds. Dr. Webb-Kummer's second questionnaire was dated October 7, 2010. In that opinion, she indicated the clamant [sic] was precluded from full time work at any exertion level since September 2008 because chronic pain in the low back and knees, fibromyalgia, carpal tunnel syndrom, and fluid retention. The information provided in these forms is conclusory at best and there are no clinical or laboratory abnormalities reasonably associated with or evidence supporting these diagnoses or limitations. In addition, while this physician did see the claimant, there is no indication she conducted a physical examination. Furthermore, the undersigned considers the discrepancies in the disability dates. Therefore, the opinions of this treating doctor are given minimal weight.

AR 19.

Here, the ALJ gave several specific and legitimate reasons for rejecting Dr. Webb-Kummer's opinion. First, the ALJ noted that the medical opinion was not supported by clinical findings. An ALJ is not required to accept an opinion of a treating physician, or any other medical source, if it is conclusory and not supported by clinical findings. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Dr. Webb-Kummer, diagnosed Plaintiff with extreme limitations. Specifically, when asked on a questionnaire "what percentage of an 8-hour work day can [Plaintiff] perform the following activities, Dr. Webb-Kummer answered 0% to every activity listed including, reaching, handling, feeling, pushing/pulling and grasping. AR 300. When asked on a questionnaire "how long, at one time, can [Plaintiff] perform activities without resting, Dr. Webb-Kummer answered "1 min" to every category including, reaching, handling, feeling, pushing/pulling and grasping. AR 300. To the contrary, while there were positive Tinel's sign and Phalen's test for Plaintiff's carpal tunnel, surgery was not recommend, she was given steroid shots, and her MRI was unremarkable. AR 415-416. Further, the treatment record shows that on examination, Plaintiff's back included no tenderness and normal range of motion, and there was no evidence of any physical impairment. AR 231-232.

The ALJ further correctly discounted Dr. Webb-Kummer's opinion because it was self-contradicting. AR 17-18. The ALJ noted the inconsistency between the dates provided by Dr.

Webb-Kummer.  AR 17-18, 300, 454. On June 23, 2010, Dr. Webb-Kummer listed Plaintiff's alleged onset date as May 8, 2009.  On October 7, 2010, Dr. Webb-Kummer listed Plaintiff's alleged onset date as September 9, 2008.  The ALJ was entitled to discredit the treating physician's opinions based on these inconsistencies.  *See Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) (per curiam) (treating doctor's conclusory opinion that claimant was disabled was properly rejected by ALJ when it was internally inconsistent and not consistent with doctor's prior medical reports)

Finally, the ALJ noted that Dr. Webb-Kummer's opinion was inconsistent with the medical record as a whole.  AR 17.  The ALJ thoroughly described the opinion of Dr. Webb-Kummer as well as the other medical opinions and concluded that Dr. Webb-Kummer's opinion was an outlier among both the non-examining and examining physicians.  No credited opinion assessed limitations as extreme as those assessed by Dr. Webb-Kummer (*i.e.*, finding that Plaintiff was incapable of work). AR 275, 300-303.

ALJ Callis afforded the opinions of consultative examiner Tri Minh Pham, M.D. and state agency medical consultant W. Jackson, M.D. more weight than Dr. Webb-Kummer's opinion because their opinions were consistent with the medical evidence in the record.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings).  The ALJ correctly gave greater weight to such opinions because they were most consistent with the record, which overall showed that Plaintiff could work.  AR 16-18.  *See* 20 C.F.R. § 416.927 (d)(4), (providing that more weight is given to an opinion that is more consistent with the record as a whole).

Dr. Pham, an internal medicine consultative examiner, examined Plaintiff on March 9, 2009. AR 231.  Dr. Pham noted Plaintiff's history of Hepatitis C, but with no treatment or history of hepatic failure or jaundice. AR 232.  Testing on Plaintiff's back revealed no tenderness and a normal range of motion.  Plaintiff's finger movements were normal.  Dr. Pham noted that despite a reported history of back and knee pain and fibromyalgia and corresponding complaint, there was no evidence of any physical impairment.  AR 232.  He opined that Plaintiff could sit, stand, and walk, without any restriction and carry up to 20 pounds.

The Case Analysis of Dr. Jackson noted that the physical consultative examination, with the exception of obesity with a Body Mass Index of 46, was normal.  AR 246-247.  In particular, he pointed out there was no description of the claimant's history or physical findings to support the diagnosis of fibromyalgia.  AR 247.  Furthermore, Dr. Jackson noted there was no description of tender points, sleep loss, or cognitive dysfunction as suggested by the American College of Rheumatology. AR 247.  Dr. Jackson opined that the evidence in Plaintiff's case supported a finding of a medium RFC.  AR 247.

When assessing Plaintiff's fibromyalgia, Dr. Webb-Kummer found pain on digital palpation at every single listed tender point site.  AR 300.  No other physician found evidence of extreme physical limitations due to Plaintiff's fibromyalgia. The most that any physician found was mild to moderate mental limitations, and no other physician stated that Plaintiff could not work. In fact, every other physician concluded that Plaintiff retained an ability to perform at least some work. AR 17-18. The ALJ legitimately decided that Dr. Webb-Kummer's opinion was an outlier, and thus entitled to "minimal weight" AR 18.

Here, the ALJ did not fully credit Dr. Webb-Kummer's medical opinion because it was not supported by medical findings, it was internally inconsistent, and it was inconsistent with the medical record.  These were appropriate reasons, and the ALJ was entitled to resolve the conflict between Dr. Webb-Kummer's opinion and those of every other doctor in favor of the conclusion supported by the bulk of the objective evidence.  Accordingly, the Court finds no error in the ALJ's decision in rejecting Plaintiff's treating physician's opinion.

### 3.    Credibility Findings

Plaintiff also contends the ALJ failed to give a significant justification for rejecting her subjective claims. (Doc. 17 at 9).  The Commissioner counters that the ALJ was not required to recount all of her subjective complaints and that there were multiple reasons to reject Plaintiff's credibility.

A two step analysis applies at the administrative level when considering a claimant's subjective symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  First, the claimant must produce objective medical evidence of an impairment that could reasonably be

expected to produce some degree of the symptom or pain alleged. *Id*. at 1281-1282. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings that include clear and convincing reasons for doing so. *Id*. at 1281. The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

An ALJ can consider many factors when assessing the claimant's credibility. *See Light v. Social. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ can consider the claimant's reputation for truthfulness, prior inconsistent statements concerning symptoms, other testimony by the claimant that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, or the observations of treating and examining physicians. *Smolen*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (2007). "An ALJ is not 'required to believe every allegation of disabling pain' or other non-exertional impairment." *Orn v. Astrue*, 495 F.3d at 635 (citation omitted).

The first step in assessing Plaintiff's subjective complaints is to determine whether Plaintiff's condition could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Here, the ALJ found that Plaintiff had the severe impairments of borderline intellectual functioning, left knee osteoarthritis, history of opioid dependence, and obesity. AR 12. ALJ Callis found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms," but that Plaintiff's statements concerning "the intensity, persistence, and limiting effects of these symptoms are not entirely credible to the extent they are inconsistent with the residual functional capacity assessment." AR 16. This finding satisfied step one of the credibility analysis. *Smolen*, 80 F.3d at 1281-1282.

Second, "[i]n order to disbelieve a claim of excess pain, an ALJ must make specific findings justifying that decision." *Id.* (citing *Magallanes v. Bowen*, 881 F.2d at 755).  The findings must convincingly justify the ALJ's rejection of the plaintiff's excess pain testimony.  *Id.* at 602.  However, an ALJ cannot be required to believe every allegation of disabling pain.  "This holds true even where the claimant introduces medical evidence showing that he has an ailment reasonably expected to produce some pain."  *Id.* at 603.

Specifically, ALJ Callis made the following findings:

> The claimant also alleges she has Hepatitis C and some associated fatigue, and this has been considered.  She has this medically determinable impairment as it was diagnosed by treating sources on numerous occasions.  While it is acknowledged that the claimant has this medical condition, it is not severe because there have been no recommendation of treatment for this, or suggestions by any treating or examining doctor that it causes any functional limitation.  AR 13.

> In terms of the claimant's alleged disability, she testified she lives in a house with one other person, a friend.  She said she gets up at 6:00am, uses the restroom, and prepares a bowl of cereal.  She said she is able to take care of her hygiene.  The claimant testified she works around the house a little, with breaks.  She said that during the day she stays home and watched television, but has no other activities.  In addition, the claimant has never worked at a substantial gainful activity level.  Her only reports earnings were for employment at a rate of pay of $5.50 per hour received for work between August 25, 1986, and September 1, 1986; the claimant testified she earned $386.00 at this job.  She has a history of heroin dependence.  The claimant said her husband took care of her while she raised three children.  This lack of employment history is more indicative of a lack of motivation to work than of disability.

> Also in terms of credibility, the undersigned has considered Dr. Jackson's Case Analysis of March 30, 2009,... which recorded that the claimant was on methadone maintenance.  This doctor question her credibility, noting she has allegations of severe panic attacks, but not much treatment to back up mental problems as alleged.  He stated, in addition to a history of ongoing heroin usage, she has been arrested for welfare fraud in the past.  AR 17.

The ALJ then went on to point out that both state agency physicians found Plaintiff capable of work.  AR 17.

First, the ALJ also noted that Plaintiff was not undergoing any treatment for her alleged disability. AR 13.  The ALJ discussed that while Plaintiff claims disability because of carpal tunnel and Hepatitis C, there have been no recommendations for treatment of these conditions nor has there been any treatment for these conditions.  AR 13.  This is a proper consideration.  A "relevant" ground for rejecting credibility may be an "'unexplained, or inadequately explained, failure to seek

13

treatment or follow a prescribed course of treatment." *Bunnell*, 947 F.2d at 346 (9th Cir. 1991) (quoting *Fair*, 885 F.2d at 603).

The ALJ also correctly discounted Plaintiff's credibility based on her prior work history. AR 16. The ALJ specifically noted that Plaintiff has never really worked and that her lack of work history was more of an indication of lack of motivation rather than disability. AR 16. This was a proper consideration. *See Thomas*, 278 F.3d at 959 (ALJ's finding claimant had "extremely poor work history" and showed "little propensity to work" supports negative credibility determination); *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001) ("A lack of work history may indicate a lack of motivation rather than a lack of ability."); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (in considering symptom evidence, fact-finder "will consider all of the evidence presented, including information about [claimant's] prior work record....").

Next, the ALJ outlined Plaintiff's extensive daily activities, such as taking care of personal affairs, household chores, and daily food preparation, which activities, he concluded, "suggest some physical capacity." AR 14. *See Burch*, 400 F.3d at 680-81 (claimant's daily activities of caring for her own personal needs, cooking, cleaning, shopping, and interacting with family "suggest that she is quite functional").

The ALJ also noted that Plaintiff had been arrested in the past for welfare fraud. AR 16. Courts have held that a claimant's conviction for a crime of "moral turpitude" is a factor providing a proper basis for an adverse credibility finding. *Albidrez v. Astrue*, 504 F.Supp.2d 814, 822 (C.D. Cal.2007) (finding that a conviction for showing false identification to a police officer was a crime of moral turpitude, and thus, provided a proper basis for an adverse credibility determination).

Finally, the record contains evidence that Plaintiff exaggerated her symptoms. For example, the ALJ noted that Plaintiff reported having severe panic attacks, but there are no treatment notes supporting her claims. AR 16, 36. Further, Plaintiff's functional report noted that she has to "use a walker to get around," but this was not apparent at the hearing. AR 15-16, 198, 398.

Here, the ALJ provided a number of specific reasons for discrediting Plaintiff's testimony, and identified specific testimony that was inconsistent with the record. AR 15-16. The reasons identified by the ALJ for finding Plaintiff not entirely credible are valid and supported by substantial

1  evidence, and, therefore, the decision must not be disturbed. Accordingly, the ALJ did not err in

2  rejecting the Plaintiff's subjective symptoms.

3        ***4.***     ***Plaintiff's New Evidence Does Not Warrant Remand***

4        Finally, Plaintiff argues that mental health evidence submitted to the Appeals Council after

5  the ALJ's decision established additional step two impairments affecting Plaintiff's mental RFC.

6  (Doc. 19 at 3).

7        Plaintiff argues her case should be remanded to the ALJ for two reasons. First, progress

8  notes by Dr. Chua contained in Mr. Sandoval's report establish several examples of Plaintiff's

9  mental impairments. According to Plaintiff, on April 22, 2011, M. Chua, M.D., reported having seen

10  Plaintiff several times and on examination found Plaintiff to be markedly obese with low self esteem,

11  and recorded panic attacks 3 times per week, chronic anxiety, and depression. AR 460. Second,

12  Plaintiff argues that, as a Licensed Clinical Social Worker ("LCSW") working closely with Dr.

13  Chua, David Sandoval's opinion should be credited as an acceptable medical source. In a January

14  7, 2011 report, Mr. Sandoval, reported that Plaintiff had seen Dr. Chua the previous June, and he

15  noted evidence of ongoing anxiety, panic attacks and major depressive disorder. AR 455-65. The

16  Commissioner contends this new evidence does not establish disability.

17        Here, the treatment notes by Dr. Chua included in the report by Mr. Sandoval were

18  considered by the Appeals Council. AR 1. Both were made a part of the administrative record. See

19  AR 4-5. The Appeals Council however concluded that this evidence did not warrant review of the

20  ALJ's decision. AR 1-2 ("In looking at your case, we considered . . . the additional evidence listed

21  on the enclosed Order of Appeals Council" and "found that this information does not provide a basis

22  for changing the Administrative Law Judge's decision"). Thus, the Appeals Council denied review

23  of the ALJ's December 7, 2010, decision.

24        Courts may consider evidence submitted for the first time to the Appeals Council "to

25  determine whether, in light of the record as a whole, the ALJ's decision was supported by substantial

26  evidence." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161-63 (9th Cir. 2012) (noting

27  that when the Appeals Council considers new evidence in denying a claimant's request for review,

28  the reviewing court considers both the ALJ's decision and the additional evidence submitted to the

1   Council); *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) ("We properly may consider the

2   additional materials because the Appeals Council addressed them in the context of denying

3   Appellant's request for review."). Accordingly, this Court will consider the progress notes in its

4   review of this administrative record. *Brewes*, at 1163.

5         Considering the record as a whole, the new evidence that Plaintiff submitted to the Appeals

6   Council does not change the fact that substantial evidence supports the ALJ's decision. First, an

7   examination of the evidence reveals that it is not material and merely reiterates Plaintiff's subjective

8   complaints. In the progress notes submitted to the Appeals Council, Dr. Chua merely recorded

9   Plaintiff's subjective complaints in direct quotes stating that Plaintiff is "on a downward spiral" and

10  "I get panic attacks 3x a week." AR 460. Dr. Chua did not diagnose Plaintiff with new or additional

11  mental impairments, she simply recorded Plaintiff's subjective complaints, which the ALJ found not

12  credible. AR 16-17. Further, in earlier assessments before the ALJ, Dr. Chua stated that Plaintiff

13  "seems to want more meds because she is a drug addict"(AR 308) and Plaintiff "is quite dramatic,

14  she appears in distress but is also drug seeking" (AR 362). Plaintiff has failed to show that the

15  additional treatment notes made by Dr. Chua in Mr. Sandoval's report undercut the ALJ's opinion.

16        Second, as an "other source," there is no requirement that the ALJ would accept or

17  specifically refute Mr. Sandoval's report. The distinction between "acceptable medical sources" and

18  "other sources" is important because only acceptable medical sources can be considered treating

19  sources and accorded great or controlling weight. *See* 20 C.F.R. § 416.927(c). Acceptable medical

20  sources include licensed physicians, licensed psychologists, licensed optometrists, licensed

21  podiatrists, and qualified speech-language pathologists. *See* 20 C.F.R. §§ 416.913(a), 416.913(a).

22  Medical sources not listed as an acceptable medical source are considered "other sources." 20 C.F.R.

23  § 416.913(d)(1). Licensed clinical social workers, therapists, public and private social welfare

24  agency personnel, and rehabilitation counselors are not acceptable medical sources. SSR 06-03p,

25  2006 SSR LEXIS 5; *see also* 20 C.F.R. § 416.913(d). The ALJ expressly relied on the mental health

26  opinions of state agency consultant, E. Murillo, M.D. Dr. Murillo diagnosed Plaintiff with

27  borderline intellectual functioning and an anxiety disorder but found that Plaintiff's functioning was

28  only mildly impaired with no episodes of decompensation. AR 18. Plaintiff has failed to show that

1  the new evidence submitted to the Appeals Council should have changed the ALJ's reliance on Dr.

2  Murillo's opinion.

3          Finally, the additional evidence dated from January 7, 2011 to July 18, 2011 also does not

4  warrant reversal because it postdated the ALJ's decision. Although Plaintiff claims that it is relevant

5  to the period on or before the hearing date, nothing in the evidence contains a retrospective

6  assessment of Plaintiff's condition before the date of the ALJ's decision. *See* AR 456-465. Indeed,

7  Plaintiff does not point to any portions of the new evidence that she contends retrospectively

8  analyzes her condition. Thus, it is not "material" evidence, and the Court must give it little weight

9  in reviewing the ALJ's decision. *See* 20 C.F.R. § 416.1470(b) ("[I]f new and material evidence is

10 submitted, the Appeals Council shall consider the additional evidence only where it relates to the

11 period on or before the hearing date of the administrative law judge hearing decision."); *cf. Smith*

12 *v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) (holding that "reports containing observations made

13 after the period for disability" that retrospectively analyze the claimant's pre-expiration condition

14 "are relevant to assess the claimant's disability").

15         The additional evidence Plaintiff submitted to the Appeals Council does not undercut the

16 ALJ's opinion.  The reports were not from acceptable sources.  They predominantly consist of

17 Plaintiff's subjective complaints, and they post date the ALJ's decision.  Having considered this

18 evidence, the Court agrees with the Appeals Council that the evidence does not negate the fact that

19 there was substantial evidence in the record to support the ALJ's decision.

20                                              **RECOMMENDATION**

21         Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial

22 evidence in the record as a whole and is based on proper legal standards.  Accordingly, the Court

23 RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of

24 Social Security be DENIED and that JUDGMENT be entered for Defendant Michael J. Astrue and

25 against Plaintiff Donna Vernon.

26         These findings and recommendations will be submitted to the district judge pursuant to the

27 provisions of Title 28 of the United States Code section 636(b)(l).  Within fifteen (15) days after

28 being served with these findings and recommendations, the parties may file written objections with

1  the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and

2  Recommendations."  The parties are advised that failure to file objections within the specified time

3  may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.

4  1991).

5       IT IS SO ORDERED.

6  **Dated:   February 20, 2013**                    **/s/ Barbara A. McAuliffe**
                                                    UNITED STATES MAGISTRATE JUDGE

18